IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) | CIVIL NO. 11-00047 JMS-BMK |
|---|---|---|
| Plaintiff, | ) ) ) ) | ORDER PROVIDING COURT'S INCLINATIONS AND REQUESTING SUPPLEMENTAL BRIEFING |
| vs. | ) ) | |
| M.F., by and through her Parents R.F. and W.F., | ) ) ) | |
| Defendant. | ) ) | |

## ORDER PROVIDING COURT'S INCLINATIONS AND REQUESTING SUPPLEMENTAL BRIEFING

    This is a procedurally complex action brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. -- it encompasses consolidated Requests for Impartial Due Process Hearing, multiple school years, two individualized education programs ("IEP"), and overlapping reimbursement and "stay put" periods. Given the case's complexity, the court deems it appropriate to provide its general inclinations on the main issues, and -- in that light -- ask the parties to file supplemental briefing explaining their views on the proper remedy should the court ultimately proceed with its inclinations. The arguments regarding the remedy can thus be more focused.

# I. BACKGROUND

At least three basic questions are now under submission. First, the court is deciding whether the Hearings Officer erred in finding that Plaintiff Department of Education, State of Hawaii (the "DOE" or the "State") denied a Free Appropriate Public Education ("FAPE") to Defendant M.F. ("M.F." or the "Student") by failing to have an IEP in place for Student before the start of the 2009-2010 school year ("SY"). Doc. No. 1-1 at 13, Aug. 26, 2010 Admin. Order at 3. The Hearings Officer found a denial of a FAPE at a summary judgment stage of the administrative proceedings, based upon the DOE's procedural errors in not having an IEP in place and in not annually revising the May 28, 2008 IEP. *Id.*

Second, the court is deciding whether the Hearings Officer erred in his November 18, 2010 decision in finding that the February 11, 2010 IEP's offer of a FAPE at a DOE "Integrated Learning Center" was inappropriate and that M.F.'s private placement at Loveland was appropriate, such that M.F. is entitled to reimbursement and compensatory education at Loveland, including extended school year ("ESY") periods. Doc. No. 1-1 at 32-33, Nov. 18, 2010 Admin. Order at 20-21.

Third, the court is facing issues of "stay put" under 20 U.S.C. § 1415(j), deciding when "stay put" began and how much the DOE must pay to Loveland under the particular facts and history of this case.

The court heard these and other matters on September 12, 2011, and has carefully reviewed the administrative record and considered the written submissions in light of the oral argument. The court is inclined to rule in part as follows, and seeks supplemental briefing based upon these inclinations.[1]

## II. DISCUSSION

**A.     Standard of Review**

The court applies a basic three-step analysis in determining whether a qualified disabled student is entitled to reimbursement for, or payment of, a private placement from a school district (here, the State) under the IDEA.

The court first asks whether the school district violated the IDEA, either "procedurally" or "substantively." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206-07 (1982). A school district may violate the IDEA's statutory or regulatory procedures in creating or implementing (or failing to create or implement) an IEP.

---

[1] The court cautions that these are only inclinations. Indeed, further analysis of the remedy, after considering supplemental briefing, may lead to changes in the court's reasoning in other areas.

*Id.* Or a school district may violate the IDEA substantively by offering an IEP that is not reasonably calculated to enable the child to receive educational benefit. *Id.*

If the IDEA is violated, the next question (where the IDEA violation is "procedural") is whether that violation denied that student a FAPE -- for not all procedural violations are actionable. *See, e.g.*, *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009). The procedural violation must result in the "loss of an educational opportunity or seriously infringe the parents' opportunity to participate in the IEP formulation process." *Id.* (quoting *W.G. v. Bd. of Trs. of Target Range Sch. Dist.*, 960 F.2d 1479, 1484 (9th Cir. 1992)). That is, "where a procedural violation does not result in a lost educational opportunity for the student, the violation is 'harmless error' because it does not deny the student a FAPE." *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 938 n.4 (9th Cir. 2007) (quoting *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 651-52 (9th Cir. 2005) (Gould, J., concurring)).

The third step is the remedy. If an IDEA violation results in denial of a FAPE, a district court has discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Such relief could include reimbursement for a private placement. *See* 20 U.S.C. § 1412(a)(10)(C)(ii); *Sch. Comm. of Burlington v. Dep't of Ed. of Mass.*, 471 U.S. 359, 370 (1985). The

parent or guardian, however, must also establish that the particular private placement is itself "appropriate." *See, e.g.*, *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1183 (9th Cir. 2009). Moreover, "even [if private placement is appropriate] courts [also] retain discretion to reduce the amount of a reimbursement award if the equities so warrant -- for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school." *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2496 (2009); *see also* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa) (allowing reduction or denial if "the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency"). "The conduct of both parties must be reviewed to determine whether relief is appropriate." *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994) (internal citations omitted). The court or hearings officer "must consider all relevant factors, including the notice provided by the parents and the school district's opportunities for evaluating the child, in determining whether reimbursement for some or all of the cost of the child's private education is warranted." *Forest Grove*, 129 S. Ct. at 2496.

**B.     Inclinations Regarding the November 18, 2010 Administrative Decision**

Applying these principles, the court is inclined to find that the Hearings Officer erred in deciding at a summary judgment stage that the DOE necessarily denied the Student a FAPE (even assuming that the DOE committed procedural violations of the IDEA). That is, the Hearings Officer appears to have omitted the "harmless error" step. He did not analyze whether the procedural violations resulted in the "loss of an educational opportunity or seriously infringe[d] the parents' opportunity to participate in the IEP formation process." *L.M.*, 556 F.3d at 909.

An educational opportunity may certainly be lost if there is no IEP, but here the parents seem not to have desired an IEP -- much less a public placement -- at all. Although the record was not developed at the administrative level in this regard, the parents did not respond to multiple notices from the DOE, and did not challenge the DOE's offer of a FAPE in May 2008 before choosing to enroll M.F. at Variety School. *See, e.g.*, *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 67-70 (3d Cir. 2010) (concluding there was no "loss of educational opportunity" in a situation where an IEP was not in place at the beginning of school year, due in part to lack of "cooperation" by parents); *MM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 535 (4th Cir. 2002) (reasoning that there was no

evidence that student suffered an educational loss because her parents "would [not] have accepted any FAPE offered by the District").

Because the Hearings Officer's decision was made at the summary judgment stage as a matter of law, no hearing was conducted as to the circumstances and nature of the Student's withdrawal. A factual inquiry appears to be necessary. And remanding for a proper and complete determination of whether a FAPE was denied (based on the failure to have an IEP in place before the start of SY 2009-2010) would necessarily require vacating the Hearings Officer's subsequent awards that were based on that denial of a FAPE.

Further, the court is also inclined to find that the Hearings Officer erred by simply awarding reimbursement and compensatory education without analyzing equitable factors as required by *Forest Grove* and 20 U.S.C. § 1412(a)(10)(C)(iii). The Hearings Officer did not address "all relevant factors" in making his awards. *Forest Grove*, 129 S. Ct. at 2496. There appear to be relevant fact-based questions such as (1) the circumstances and nature of the parents' desire for a public education and possible lack of "cooperation" with the DOE by failing to respond to periodic notices; (2) the effect of a lack of a challenge to, or rejection of, the May 28, 2008 IEP under § 1412(a)(10)(C)(iii); and (3) "the notice provided by the parents" as affecting the DOE's "opportunities

for evaluating the child" because most, if not all, of M.F.'s gender identity disorder appears to have arisen after she left the public placement. *Forest Grove*, 129 S. Ct. at 2496.

The court is also inclined to *uphold* the Hearings Officer's findings that (1) the DOE's February 11, 2010 offer of placement at an Integrated Learning Center was inappropriate (as is now apparently admitted by the DOE) and (2) M.F.'s corresponding placement at Loveland was appropriate, both before and after February 11, 2010. The record contains ample evidence that M.F. improved markedly after enrolling at Loveland in December 2009 and through the early part of 2010. For example, her gender identity disorder has been overcome, her language usage is appropriate, and her anxiety issues are under control. *See, e.g.*, Tr. 165-66. The Loveland placement appears to have been reasonably calculated to enable M.F. to receive educational benefit. *Rowley*, 458 U.S. at 207.

## C. Supplemental Briefing

If the court vacates the summary judgment decision and remands, the court would also vacate (without reference to "stay put" relief) the portions of the Hearings Officer's reimbursement and compensatory education awards that were based on that summary judgment decision. It might not, however, be possible to apportion and uphold an award stemming solely from the February 11, 2010 IEP,

which the court is inclined to agree offered an inappropriate placement. Given the overlapping IEP periods and school years covered in the November 18, 2010 decision, it is unclear how parts of the remedy as stated in that decision can stand if the court proceeds with its inclinations. The decision is ambiguous in this regard. The court thus seeks supplemental briefing addressing whether the court should remand for the Hearings Officer to consider the remedy for *all* aspects of the action (again, not including "stay put" relief, which would remain in place under § 1415(j) pending further proceedings), or whether the court can appropriately fashion a remedy based on upholding the decision on the February 11, 2010 IEP.

In particular, the November 18, 2010 decision awarded reimbursement of an unspecified amount for M.F.'s SY 2009-2010 and SY 2010-2011 (and the 2010 and 2011 ESYs) when only about three months of SY 2010-2011 had passed. He seems to have done so based in part on a deficient February 11, 2010 offer of a FAPE, which was meant to last only until February 2011 (thus covering half of SY 2009-2010 and half of SY 2010-2011).[2] The reimbursement periods partly overlap. And it appears as if the Hearings Officer made his awards in reliance on *both* his summary judgment decision (which would be vacated and

---

[2] The DOE made a new offer of a FAPE in an IEP of February 10, 2011, but that offer is not on review as part of the present appeal.

9

remanded) *and* his review of the February 11, 2010 IEP (which would be affirmed), as follows:

> Based upon [the DOE's] failure to provide an appropriate program and placement for Student during the 2009-2010 school year and during 2010 ESY; and [the DOE's] failure to offer Student an appropriate placement through the February 11, 2010 IEP, [M.F. is] awarded reimbursement for Student's placement at the current private placement, including school tuition, and related services, including transportation, and mental health services for the 2009-2010 and 2010-2010 school[] years, and 2010 and 2011 ESY.
> . . . .
> Finally, as it appears that Student was without an IEP from August 29, 2008 to February 11, 2010, [M.F.'s] request for compensatory education for the 2011-2012 school year at the current private placement is awarded.

Doc. No. 1-1, Nov. 18, 2010 Dec. at 20. That is, the reimbursement and compensatory awards appear to be intertwined with both decisions -- the summary judgment order and the review of the February 11, 2010 IEP.

The court thus asks the parties to meet and confer to consider whether -- based on their understanding of the Hearings Officer's remedial award -- they can agree as to any aspect of the awards that could stand (and what aspect would thus be subject to remand). They should consider in good faith whether any part of the remedy would not need to be remanded, if the court proceeds with its inclinations. If they agree on a possible remedy, they may file a joint statement.

10

Otherwise, they should set forth their respective positions in separate supplemental briefing.

In so doing, the parties may also address the effect on a reimbursement award of the DOE's concession that it is not challenging the Hearings Officer's factual determination that the DOE's offered placement at the Integrated Learning Center was inappropriate. Although argued at the September 12, 2011 hearing, it remains unclear how precisely this concession affects the remedy, and if so, how it might affect various time frames that might apply in computing possible reimbursement.

**D.     Stay Put Inclinations**

At the hearing, the parties also indicated that it could facilitate matters if the court stated its inclinations regarding "stay put" under 20 U.S.C. § 1415(j). In this regard, the court is inclined to find that the Student's withdrawal from public school in July 2008 and placement at Variety School (and subsequent placement at Loveland), was all "unilateral." Private placement did not become "bilateral" until November 18, 2010. *See D.C. v. Dep't of Educ.*, 550 F. Supp. 2d 1238 (D. Haw. 2008); *Capistrano Unified Sch. Dist.*, 556 F.3d at 903. Thus, "stay put" would begin on November 18, 2010. The court would not find any basis to move the "stay put" earlier in time. The remaining question would be whether

Loveland's expenses should or could be reduced to reflect those aspects of the Hearings Officer's decision in favor of the DOE regarding occupational/physical therapy and speech services.

The court is inclined to find that any issues regarding a February 10, 2011 IEP (such as whether the placement at Academy of the Pacific ("AOP") in August 2011 is also part of that IEP) are not before the court. The court would only have jurisdiction to review "stay put" issues as to the present action, which challenges issues encompassed in the Hearings Officer's November 18, 2010 decision. But it does appear that, at minimum, the August 2011 placement at AOP is a "stay put" for the present action.

To be clear, however, the court does not request supplemental briefing on the "stay put" issues at this time.

## III. CONCLUSION

The parties should meet and confer to discuss these inclinations, and consider whether there are common views on the appropriate remedy, given the findings in the Hearings Officer's November 18, 2010 decision and the parties' understanding of the administrative proceedings.

After meeting and conferring, the parties may file a joint statement and/or simultaneous supplemental briefing addressing the inclinations set forth in

this Order.  Any joint statement or supplemental briefing should be filed by

**September 29, 2011.**  The supplemental briefs are limited to **fifteen pages**, or the

equivalent word count under Local Rule 7.5.  The parties should focus their

briefing on the scope of the remedy.  The parties should not attempt to re-argue

substantive matters already briefed, but rather should use this opportunity to

provide their views now that they know how the court is inclined to rule on the

main issues.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, September 15, 2011.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*State of Hawaii, Dept. of Educ. v. M.F.*, Civ. No. 11-00047 JMS-BMK, Order Providing Court's Inclinations and Requesting Supplemental Briefing