IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) CIVIL NO. 11-00047 JMS-BMK ) |
| Plaintiff, | ) ORDER DENYING DEFENDANT'S ) MOTION FOR RECONSIDERATION ) |
| vs. | ) ) |
| M.F., by and through her Parents R.F. and W.F., | ) ) ) |
| Defendant. | ) ) |

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**

**I. INTRODUCTION**

Defendant M.F., by and through her Parents, R.F. and W.F. ("M.F." or "the Student"), moves for reconsideration and/or clarification of this court's Order (1) Affirming in Part and Remanding in Part the November 18, 2010 Decision of Administrative Hearings Officer, and (2) Granting in Part and Denying in Part Defendant's Motion to Supplement Record and to Enforce "Stay Put" (the "December 29, 2011 Order"). Based on the following, the Motion is DENIED. In addressing M.F.'s arguments, however, this Order clarifies some aspects of the December 29, 2011 Order.

## II.  **DISCUSSION**

"A motion for reconsideration must accomplish two goals.  First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  *Wereb v. Maui Cnty.*, --- F. Supp. 2d ----, 2011 WL 5509002, at *4 (D. Haw. Nov. 10, 2011) (citation omitted).

> Mere disagreement with a previous order is an insufficient basis for reconsideration.  Furthermore, reconsideration may not be based on evidence and legal arguments that a movant could have presented at the time of the challenged decision.  Whether or not to grant reconsideration is committed to the sound discretion of the court.

*Id.* (internal citations omitted).

The factual and procedural background of this case is comprehensively set forth in the December 29, 2011 Order.  *See Dep't of Educ. v. M.F.*, --- F. Supp. 2d ----, 2011 WL 6940877 (D. Haw. Dec. 29, 2011).  The parties are familiar with the background and the many issues argued, and the court does

not repeat the details here. The court turns directly to M.F.'s main arguments for reconsideration and/or clarification.[1]

### A. Arguments Regarding the Hearing Officer's August 26, 2010 Order

M.F. argues that this court erred in applying the three-part "harmless error" analysis applicable to assess procedural violations of the IDEA, as set forth in *L.M. v. Capistrano Unified School District*, 556 F.3d 900, 909 (9th Cir. 2009). She contends that the Hearings Officer's August 26, 2010 Order granting partial summary judgment in her favor found *substantive* (not purely procedural) violations of the IDEA, and so the second step of the analysis regarding procedural violations (whether there was a "loss of an educational opportunity" or "serious infringement of parents' opportunity to participate") is not required.

The Hearings Officer's August 26, 2010 Order found violations of 20 U.S.C. §§ 1414(d)(2)(A) & 1414(d)(4)(A) because it was undisputed that (1) there was no IEP in place before M.F.'s 2009-2010 school year, and (2) the State of Hawaii, Department of Education ("DOE" or "State") did not conduct an annual

---

[1] This case is complex because it (1) involves several school years and overlapping individualized education program ("IEP") periods, (2) addresses multiple alleged violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, (3) raises unsettled legal issues, and (4) also concerns subsequent issues regarding "stay put" relief under 20 U.S.C. § 1415(j). The court has spent considerable time reviewing hundreds of pages of records and memoranda, and researching many issues independently; many of the arguments M.F. raises on reconsideration have already been briefed, argued, and considered. The court addresses M.F.'s primary arguments in this Order.

3

review of M.F.'s May 28, 2008 IEP. These are clearly procedural -- not substantive -- violations of the IDEA. *See, e.g.*, *MM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 533 (4th Cir. 2002) ("[T]he failure of a school district to have a final IEP in place at the beginning of a school year is a procedural defect."); *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65-66 (3d Cir. 2010).[2] Nowhere did the Hearings Officer find that these were substantive violations.

---

[2] The State asserted before the Hearings Officer (as it has throughout this litigation) that M.F.'s withdrawal from public school obviated the need to revise the May 28, 2008 IEP and to review it annually. The State specifically argued to the Hearings Officer that "[if] there is a factual dispute about whether or not [M.F.] was withdrawn or not, that is a factual issue that the Hearings Officer should address at the time of the hearing and not as part of a Motion for Summary Disposition." Tr. of Aug. 24, 2008 at 9. The court thus disagrees with M.F.'s position that "the State never advanced [before the Hearings Officer] that material issues of disputed fact existed precluding [partial summary judgment.]" Pl.'s Mot. at 27; *see also id.* at 30. As the court stated in its December 29, 2011 Order:

> Because the Hearings Officer's finding of denials of [a Free Appropriate Public Education ("FAPE")] was made at the summary judgment stage, no hearing was conducted as to the circumstances and nature of M.F.'s withdrawal. No fact finding was done as to whether there was a loss of educational opportunity. No fact finding was done regarding the reasons M.F.'s parents apparently ignored the State's notices of July 31, 2008, November 3, 2008, and August 25, 2009. No fact finding addressed whether the parents' lack of responses constituted a "lack of cooperation." (Moreover, the Hearings Officer then awarded reimbursement and compensatory education without weighing any of these types of factors.) In short, remand is necessary for a proper and complete determination of whether M.F. was denied a FAPE based on the procedural violations.

Dec. 29, 2011 Order at 40, *Dept. of Educ. v. M.F.*, --- F. Supp. 2d ----, 2011 WL 6940877 at *15. On remand, it is of course within the Hearings Officer's discretion how to address the circumstances of M.F.'s withdrawal, and within his prerogative to determine in the first instance how those circumstances affect the relevant analysis.

M.F. contends, however, that the violations were substantive because no IEP was developed for M.F. for eighteen months, during which time no special education or related services were offered to her. Pl.'s Mot. at 28. As the court acknowledged in the December 29, 2011 Order, "an educational opportunity may certainly be lost if there is no IEP." Dec. 29, 2011 Order at 38, 2011 WL 6940877 at *14. But the essential question remains whether M.F. (or her parents) desired or would have accepted a public placement during the approximately eighteen-month period. That is, as explained in the December 29, 2011 Order, it remains open whether there was a "loss of educational opportunity" for purposes of the IDEA during that time period. *Id.*

B.   **Arguments as to the Effect of the State Not Challenging the Hearings Officer's ILC Finding**

The State did not specifically challenge the Hearings Officer's finding that the State's offer of placement at an "intensive learning center" ("ILC") in the February 11, 2010 IEP was inappropriate ("the ILC inappropriateness finding"). Rather, the State argued to this court that M.F.'s corresponding private placement at Loveland Academy was no longer appropriate as of September 2010 (at the time of the administrative hearing). Given that the State did not challenge the ILC inappropriateness finding, M.F. asserts that the court committed clear error in remanding *all* aspects of the remedy when it vacated the Hearings Officer's August

26, 2010 Order while also upholding the findings that M.F.'s placement at Loveland Academy both before and after February 11, 2010 was appropriate. She contends that vacating the tuition reimbursement award for the period from February 11, 2010 to August 2010 improperly remands the ILC inappropriateness finding -- a finding which M.F. claims this court "had no jurisdiction" to remand. Doc. No. 57-1, Mot. at 14.

Throughout this litigation, M.F. has repeatedly argued (as she does again here on reconsideration) that the State's failure to challenge the ILC inappropriateness finding deprives this court of "jurisdiction" to address that finding. It is not, however, a matter of jurisdiction. Rather, the State's decision not to appeal the ILC inappropriateness finding (by choosing not to raise it in its opening brief) *waived* the issue. *See, e.g.*, *Blanchard v. Morton Sch. Dist.*, 509 F. 3d 934, 938 (9th Cir. 2007) (reasoning that "[Student] abandoned that claim by failing to raise it in her brief on appeal"); *Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1114 n.8 (9th Cir. 2005) (indicating that arguments not raised in the opening brief are waived); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 979 F.2d 721, 726 (9th Cir. 1992) (same); *Warren G. v. Cumberland Cnty. Sch. Dist.*, 190 F.3d 80, 84 (3d Cir. 1999) (stating the principle in an IDEA context). Nevertheless, this rule of waiver has exceptions. *See, e.g.*, *Koerner v. Grigas*, 328 F.3d 1039, 1048-

49 (9th Cir. 2003) (describing "[t]hree main exceptions to that rule" -- "good cause," "manifest injustice," and lack of prejudice to the opposing party). And so, the State's failure to raise an issue is not a jurisdictional bar.³

That said, the State *has* waived the issue -- it is established as fact that the State's proposed placement at an ILC in February 2010 was inappropriate. And the State remains precluded from arguing to the contrary on remand. Given such preclusion, M.F. still contends that this court cannot vacate the award of tuition reimbursement for the period from February 11, 2010 until August 2010. She argues that such an award must have been based on the ILC inappropriateness finding and could not have been based on the Hearings Officer's now-vacated August 26, 2010 Order (which is the primary basis of vacating and remanding the entire award).

This court, however, remains of the view that the November 18, 2010 Decision is ambiguous. The Hearings Officer "concluded that Petitioners have *not* shown that the program in the February 11, 2010 IEP *did not* offer Student a FAPE[.]" AR 201 (emphases added). And he found denials of FAPE "[a]s stated

---

³ For purposes of jurisdiction, the State timely appealed the Hearings Officer's November 18, 2010 Decision. And that Decision incorporated the Hearings Officer's earlier August 26, 2010 Order finding procedural violations and denials of FAPE -- and so the State also appealed from that Order as well. That is, the State appealed the denials of FAPE, but waived a challenge regarding placement at the ILC.

in the August 26, 2010 Order" and thus awarded tuition reimbursement "for the 2009-2010 and 2010-2011 school years, and 2010 and 2011 ESYs." AR 201-202. As his decision reads, the Hearings Officer *might* have awarded tuition reimbursement for all of the 2009-2010 school year and 2010 ESY based upon his now-vacated August 26, 2010 Order. Or maybe not. *See* Dec. 29, 2011 Order at 46-48; 2011 WL 6940877, at *17-18. But this court should not speculate. Instead, on remand, the Hearings Officer may of course clarify his decision, and is not precluded from reinstating a post-February 11, 2010 reimbursement award. As this court has already stated in its December 29, 2011 Order, "the court deems it appropriate to remand the question to the Hearings Officer for clarification." *Id.* at 49, 2011 WL 6940877, at *18.

C.  **Arguments Regarding M.F.'s Challenge (or Lack of Challenge) to the May 28, 2008 IEP**

M.F. also contends that the court misapplied 20 U.S.C. § 1412(a)(10)(C)(iii), which sets forth circumstances where "the cost of reimbursement . . . may be reduced or denied.[.]" *Id.* The section provides "discretion to reduce the amount of a reimbursement award if the equities so warrant -- for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, ___, 129 S. Ct. 2484, 2496 (2009). Under the statute,

reimbursement may be reduced or denied if "at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense."  20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa).

Given that provision, M.F. argues that this court made contradictory findings when it stated that, on the one hand, M.F.'s parents "fail[ed] to challenge the May 2008 offer of FAPE and fail[ed] to provide written notice prior to withdrawal," 2011 WL 6940877, at *15, but also acknowledged, on the other hand, that M.F.'s April 6, 2010 Request for Impartial Hearing "challenged the substance of both the May 2008 IEP, and the February 2010 IEP." *Id.* at *6.

As the State points out, however, M.F. is taking statements out of context.  M.F. did not challenge the May 2008 IEP in any matter *when it was offered.* They did not inform M.F.'s IEP team that they were rejecting the proposed placement at that time.  That is the time frame contemplated by § 1412(a)(10)(C)(iii)(I)(aa).  M.F. did, however, challenge the May 2008 IEP (among other issues) nearly two years later when she filed her Requests for Impartial Hearing.  And such circumstances should be considered, among others,

in addressing whether (or how much) reimbursement may be awarded for denials of FAPE based on a failure to revise the May 2008 IEP on an annual basis. *See Forest Grove*, 129 S. Ct. at 2496 (indicating a decision "must consider all relevant factors, including the notice provided by the parents and the school district's opportunities for evaluating the child, in determining whether reimbursement for some or all of the cost of the child's private education is warranted"). The court previously found, and continues to believe, that it is appropriate for the Hearings Officer to consider these factors if necessary after addressing the other issues that have been remanded.

**D.     Arguments as to Stay Put**

Last, M.F. cites *K.D. v. Department of Education*, 665 F.3d 1110 (9th Cir. 2011), for the proposition that her stay put period began on April 6, 2010 (when she filed her first Request for Impartial Hearing) rather than on November 18, 2010 (when the Hearings Officer issued his final decision finding denials of FAPE and awarding tuition reimbursement and compensatory education) as this court found.

*K.D.* was published on December 27, 2011 while this court's December 29, 2011 Order was being finalized, but this court did cite it as further authority that "[w]here a parent unilaterally changes the placement of a child, but a

subsequent administrative or judicial decision confirms that the parental placement is appropriate, the *decision* 'constitute[s] an agreement by the State to the change of placement' and the placement becomes the 'current educational placement' for the purposes of the stay put provision." *Id.* at 1118 (citations omitted) (emphasis added).

> M.F., however, cites to earlier statements in *K.D.*, holding that
>
> K.D. is not entitled to reimbursement based on the stay put provision for the 2007-08 school year. The stay put provision may only be invoked "during the pendency of any proceedings." 20 U.S.C. § 1415(j). Accordingly, *the stay put provision does not apply unless and until a request for a due process hearing is filed.* K.D.'s request for a due process hearing was not filed until August 28, 2009. Thus, the stay put provision can have no effect on K.D.'s enrollment at Loveland during the 2007-08 school year or during the 2008-09 school year prior to August 28, 2009 -- during which no due process hearing was pending.

*Id.* at 1117 (emphasis added) (citation omitted). She contends that the emphasized phrase means that stay put begins when "a request for a due process hearing is filed." Because her first request was filed on April 6, 2010, she argues that stay put should begin on that date. The court disagrees.

First, as the State points out, this is a new argument. M.F. previously argued that her stay put period should have begun on February 20, 2010 (or earlier) because the State had subsequently "agreed" that its proposed placement at an ILC

was improper from that date forward. This court rejected that argument. M.F. never previously argued that, once a decision is rendered in her favor, the stay put period goes back to the date the challenge was filed.

Second, even if *K.D.* provides a basis for raising the argument now, *K.D.* did not change the well-settled principle that, where parents make a unilateral placement, a subsequent decision confirming that such placement is appropriate "constitute[s] an agreement by the State to the change of placement" and the placement *becomes* the "current educational placement" for the purposes of the stay put provision. *See Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990) (citing *Sch. Comm. of the Town of Burlington v. Mass. Dep't of Educ.*, 471 U.S. 359, 372-73 (1996)); *see also L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 912 (9th Cir. 2009) ("'[O]nce the parents' challenge [to a proposed IEP] succeeds . . . , consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district.'") (quoting *Mackey v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004)).[4] If anything, *K.D.* confirms that -- as this court

---

[4] *Mackey v. Board of Education For Arlington Central School District*, 386 F.3d 158 (2d Cir. 2004), held that the stay put date could begin *earlier* than the date of the favorable decision, if there is undue delay in making that decision. *Id.* at 164-65. In *Mackey*, the state administrative decision was issued a year late, when the school year for which relief was authorized had already ended. *Id.* at 164. The stay put period, however, does not begin earlier if
(continued...)

found -- M.F.'s stay put date cannot be deemed to have begun on February 11, 2010 as no due process proceeding was then pending.

### III.  CONCLUSION

Defendant's Motion for Reconsideration is DENIED.  As the court previously ordered, the court AFFIRMS in Part and REMANDS in Part the Hearings Officer's November 18, 2010 Decision.  The court also GRANTS in part and DENIES in part Defendant's Stay Put Motion, and REMANDS for further findings relevant to "stay put" relief.

Although judgment entered on December 29, 2011, the remand is effective on the date of this Order (given Defendant's timely Motion under Fed. R. Civ. P. 60).  As stated in the December 29, 2011 Order, if the Hearings Officer issues a new decision and either party subsequently appeals under 20 U.S.C.

///

///

///

---

[4](...continued)
the administrative decision was not unreasonably delayed -- which is the case here.  *See Ashland School Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1187 (9th Cir. 2009) (refusing to award "interim" stay put relief where the hearing officer's delay in issuing a favorable decision was not unreasonable).  As the Hearings Officer here acknowledged, "the 45-day period in which the decision is due under HAR Section 8-56-77, was extended [at M.F.'s request] until November 22, 2010."  Nov. 18, 2010 Decision, at 4.  His decision was timely within Hawaii's rules.

§ 1415(i)(2)(A), the court shall waive the filing fee and the matter will be assigned to this court under Local Rule 40.2.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 28, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Dept. of Educ., State of Hawaii v. M.F.*, Civ. No. 11-00047 JMS-BMK, Order Denying Defendant's Motion for Reconsideration