IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) | CIV. NO. 11-00047 JMS-BMK |
| Plaintiff, | ) ) ) | ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS AND/OR FOR |
| vs. | ) ) ) | JUDGMENT ON THE PLEADINGS, DOC. NO. 100; (2) AFFIRMING HEARINGS OFFICER'S MARCH 20, |
| M.F., by and through her Parents R.F. and W.F., | ) ) ) | 2013 DECISION; AND (3) DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT. |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER (1) DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND/OR JUDGMENT ON THE PLEADINGS, DOC. NO. 100; (2) AFFIRMING IN PART AND MODIFYING IN PART HEARINGS OFFICER'S MARCH 20, 2013 DECISION; AND (3) DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT**

## I.  INTRODUCTION

This procedurally-complex action brought under 20 U.S.C.

§ 1415(i)(2)(A) of the Individuals with Disabilities Education Act ("IDEA") has

returned after the court remanded certain matters in 2012 to a state Hearings

Officer for further administrative proceedings.  *See Dep't of Educ. v. M.F.*, 840 F.

Supp. 2d 1214 (D. Haw. 2011) ("the December 29, 2011 Order"), and *Dep't of*

*Educ. v. M.F.*, 2012 WL 639141 (D. Haw. Feb. 28, 2012) (Order Denying

Defendant's Motion for Reconsideration of the December 29, 2011 Order).

Plaintiff Department of Education, State of Hawaii ("Plaintiff" or the "D.O.E.")

filed this action in December 2010 against Defendant M.F., by and through her

Parents, R.F. and W.F. (collectively, "Defendant" or "M.F."), challenging aspects

of a November 18, 2010 administrative decision in favor of M.F.  After the court's

2012 remand, the Hearings Officer issued a March 20, 2013 "Remanded Decision

Subsequent to U.S. District Court's Order" (the "March 20, 2013 administrative

decision"), which supplemented the November 18, 2010 decision.  *See*

Administrative Record ("AR") 78-101.

Before the court are:  (1) "Defendant's Motion to Dismiss and/or In

the Alternative, Judgment on the Pleadings and Motion for Partial Summary

Judgment to Enforce 3/20/2013 HO Decision" ("Motion to Dismiss"), Doc. No.

100; and (2) challenges by both the D.O.E. and M.F. to aspects of the March 20,

2013 administrative decision.  Doc. Nos. 104, 105.  After full briefing, the matters

were argued on November 25, 2013.  Based on the following, the court:

> (1) DENIES Defendant's Motion to Dismiss asserting a lack of
> jurisdiction (with the additional relief sought -- enforcement of the
> March 20, 2013 administrative decision -- rendered MOOT, given the
> D.O.E.'s subsequent payment of amounts sought by Loveland
> Academy ("Loveland"));
>
> (2) AFFIRMS the Hearings Officer's award of payment for the costs
> of Loveland from December 2009 until February 11, 2010;

(3) AFFIRMS the award of the specific "stay put" relief at issue under 20 U.S.C. § 1415(j); and

(4) CONFIRMS that other issues regarding relief *after* February 11, 2010 are MOOT because (a) the D.O.E. has waived challenges to a February 11, 2010 Individualized Education Plan ("IEP"); and (b) the relief was otherwise provided under the IDEA's stay put provisions, and the D.O.E. has conceded that it is improper to seek recovery of such stay put payments.

## II. **BACKGROUND**

### A.   **Factual and Historical Background**

The court's December 29, 2011 Order comprehensively sets forth the factual and procedural background (and the many IDEA issues raised in this action), stemming from the Hearings Officer's November 18, 2010 decision, as well as the court's rulings regarding stay put. *See M.F.*, 840 F. Supp. 2d at 1217-24 (remanding certain issues to the Hearings Officer for additional findings and clarification), *and id.* at 1237-40 (concluding that stay put at Loveland began on November 18, 2010). The court further explained some of its reasoning on February 28, 2012, when it denied M.F.'s Motion for Reconsideration of the December 29, 2011 Order. *See M.F.*, 2012 WL 639141, at *2-5. And, on April 17, 2012, the court vacated the judgment that had been entered upon remand (and stayed the action pending a decision by the Hearings Officer) as required by *Shapiro v. Paradise Valley Unified School District*, 152 F.3d 1159, 1160-61 (9th

Cir. 1998) (applying, in an IDEA case, the general rule that an order remanding to an administrative officer for additional findings is not a final and appealable order when further judicial proceedings are contemplated, and holding that a district court errs in terminating the action pending remand under those circumstances). *See* Doc. No. 83, Order Granting Plaintiff's Motion to Set Aside Judgment; *Dep't of Educ. v. M.F.*, No. 12-15671 (9th Cir. June 12, 2012) (Ninth Circuit's Order dismissing appeal of the December 29, 2011 Order because it "is not final or appealable").

This Order picks up where those Orders left off.  The parties know the complicated factual and procedural history of this case, and the many issues argued and ruled upon.  The court need not repeat the details here -- this Order presumes familiarity with the applicable time lines and IDEA challenges, as well as the prior rulings regarding stay put relief.  It is important, however, to re-emphasize that the dispute arises from two distinct, but overlapping, denials of a Free Appropriate Public Education ("FAPE").  The first denial stems from a failure to have an IEP for M.F. in place in the Fall of 2008 and thereafter, and a related failure to review a May 2008 IEP on an annual basis (together, the "No-Annual-IEP Denial").  *See M.F.*, 840 F. Supp. 2d at 1217-21.  The second denial results from a February 11, 2010 IEP, which inappropriately offered to place M.F. at an "Intensive Learning

Center" or "ILC" beginning in February 2010 ("the February 2010 ILC Denial"). *See id*. at 1220, 1233-34. The court also reiterates that it has already concluded that the stay put period began on November 18, 2010, *id.* at 1239-40, and the court is not revisiting that decision here.

Furthermore, the following developments or concessions (arising after the March 20, 2013 administrative decision) are also important in framing the exact issues remaining before the court:

(1) The parties agreed at the November 25, 2013 hearing that any challenges regarding reimbursement or a compensatory award starting from November 18, 2010 (when the stay put period began) until the present are MOOT, given the nature of stay put relief.[1] This period includes the compensatory

---

[1] *See, e.g.*, *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 912 (9th Cir. 2009) ("Where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs regardless of the outcome of an appeal.") (citing *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990)); *Ravenswood City Sch. Dist. v. J.S.*, 2010 WL 4807061, at *5 (N.D. Cal. Nov. 18, 2010) (rejecting the argument that an inability to recover stay put payments constitutes irreparable harm, reasoning that "that is simply how the stay put provision of the IDEA operates") (citing *Capistrano Unified Sch. Dist.* 556 F.3d at 912); *Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002) (concluding that a school district's responsibility for stay put tuition paid during a due process challenge is absolute and not subject to recovery); *Jenkins v. Squillacote*, 935 F.2d 303, 307 n.3 (D.C. Cir. 1991) ("It would be absurd to imagine a trial court ordering parents to reimburse a school system for the costs of a hearing examiner's erroneous placement of their child, and any such order would clearly be an abuse of discretion.") (citing *Town of Burlington v. Dep't of Educ. for the Commonwealth of Mass.*, 736 F.2d 773, 800 (1st Cir. 1984) ("Retroactive reimbursement by parents is not 'appropriate' relief within the meaning of § 1415(e)(2) where they relied on and implemented a state administrative decision in their favor ordering a particular placement."); *C.G. ex rel. B.G. v. New York City*

(continued...)

education award for M.F.'s 2011-12 school year, which the parties agree was based upon the No-Annual-IEP Denial.[2]

(2) The parties agreed that (given a clarification from the Hearings Officer in the March 20, 2013 administrative decision) the D.O.E. has not challenged, or is no longer challenging, the Hearings Officer's determination that the February 2010 ILC Denial was a substantive denial of FAPE. (This includes the D.O.E.'s waiving a prior challenge to the continued appropriateness of placement at Loveland in September through November of 2010.)

(3) It follows, and the parties agreed that -- because a reimbursement award for the period from February 11, 2010 until November 18, 2010 was based upon the February 2010 ILC Denial -- any issues regarding this time frame are no longer at issue and are MOOT.

(4) The parties agreed that the D.O.E. has subsequently paid all outstanding invoices due to Loveland -- including payment of the reimbursement award beginning in December 2009 until November 18, 2010. *See* Doc. No. 109-

---

[1](...continued)
*Dept. of Educ.*, 752 F. Supp. 2d 355, 361 (S.D. N.Y. 2010) ("Allowing the DOE to seek reimbursement of pendency payments from Plaintiffs would turn payments pursuant to pendency under 20 U.S.C. § 1415(j) into mere fee shifting.").

[2] That is, the compensatory education award (M.F.'s 2011-12 school year) is entirely subsumed within the stay put period -- it is *after* November 18, 2010 when stay put began.

4, Pl.'s Ex. C.  That is, Loveland has been fully paid (although, as discussed below, the court recognizes that M.F. has a limited remaining challenge seeking further recovery for amounts previously deducted from an original stay put charge regarding speech and occupational therapy services -- a deduction that the Hearings Officer upheld in favor of the D.O.E. in the March 20, 2013 administrative decision).

Accordingly, the remaining dispute centers around a reimbursement award for a "sliver" of time relative to the periods originally at issue -- a sliver from December 2009 until February 11, 2010.[3]  The parties agreed that the award for this sliver was based upon the No-Annual-IEP Denial (and not the February 2010 ILC Denial).  The D.O.E. contends that, although it has already paid all outstanding invoices to Loveland (including for this sliver), it might nevertheless seek to recover any such (non-stay put) payments directly from Loveland or

---

[3] This is aside from possible attorney fee issues, which are collateral to issues regarding entitlement to reimbursement or payment of the costs for placement at Loveland or payment for compensatory education.

The court is cognizant that Defendant might file a post-judgment motion for attorney fees.  The court also recognizes that this lengthy action entailed many hearings at this (and the administrative) level, and involved successful and unsuccessful challenges by both sides on various issues -- some of which were of minor importance in the overall scheme of the litigation.  Given this particular background, the court emphasizes to both parties the rule that a reasonable fee is based, most critically, on "the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  And, especially with a case of this background, the court also stresses the importance of the good faith "consultation" requirement, *see* Local Rule ("LR") 54.3(b), as well as the other strict requirements regarding itemization and description of services rendered.  *See, e.g.*, LR 54(d)(1) to (3).

indirectly from M.F.'s parents, if it successfully challenges the award for this sliver.

## B.     Procedural Background

On March 20, 2013, the Hearings Officer issued his administrative decision, addressing certain issues set forth in the court's December 29, 2011 Order.  AR 78.  Thereafter, on April 26, 2013, the court received a joint letter from counsel forwarding the March 20, 2013 administrative decision to this court.  Doc. No. 92.  At a May 29, 2013 status conference, the parties agreed that the D.O.E. could file an amended complaint that would preserve (for any eventual appeal to the Ninth Circuit) challenges to rulings in the December 29, 2011 Order, but that would also challenge issues derived solely from the March 20, 2013 administrative decision.  Doc. No. 93.  Similarly, M.F. was allowed to file a counter-claim/counter-appeal, also limited to issues derived from the March 20, 2013 decision.  *Id.*  Accordingly, on June 12, 2013, the D.O.E. filed an Amended Complaint, Doc. No. 94, and on June 19, 2013, M.F. filed an Answer and Counterclaim.  Doc. No. 95.

On August 4, 2013, M.F. filed its Motion to Dismiss.  Doc. No. 100. The D.O.E. filed its Opposition on November 4, 2013, Doc. No. 109, and M.F. filed a Reply on November 10, 2013.  Doc. No. 112.  Meanwhile, on August 29,

and 30, 2013, both parties filed Opening Briefs, challenging aspects of the March 20, 2013 administrative decision.  Doc. Nos. 104, 105.  Corresponding Answering Briefs were filed on September 30, 2013, Doc. Nos. 106, 107, and the D.O.E. filed a Reply Brief on October 15, 2013.  Doc. No. 108.  On November 25, 2013, the court heard oral argument.  Doc. No. 113.

## III. <u>DISCUSSION</u>

### A.    The Court Has Jurisdiction to Review the March 20, 2013 Decision

M.F.'s Motion to Dismiss argues that the court lacks jurisdiction to review the March 20, 2013 administrative decision, pointing out that the D.O.E. did not file a new notice of appeal within thirty days from March 20, 2013, and did not file its Amended Complaint until June 12, 2013.  *See* 20 U.S.C. § 1415(i)(2)(B) ("The party bringing the [civil action under § 1415(i)(2)(A)] shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows."); Haw. Admin. R. ("HAR") § 8-60-70(b) ("The party bringing the action shall have 30 days from the date of the decision of the hearing officer to file a civil action[.]").

As the court ruled during the November 25, 2013 hearing, the Motion to Dismiss is DENIED.  As this court concluded in its April 17, 2012 Order, the

December 29, 2011 Order was an unappealable "remand order."  Further

proceedings in this court were contemplated after the Hearings Officer made

additional findings and a clarification.  And the Ninth Circuit later confirmed that

the December 29, 2011 Order is not final or appealable, and thus the action

remained open.  *See Dep't of Educ. v. M.F.*, No. 12-15671 (9th Cir. June 12, 2012)

(Ninth Circuit's Order dismissing appeal because the December 29, 2011 Order "is

not final or appealable").  This court stayed the action pending a decision on

remand, but the case nevertheless remained on the court's docket based upon the

D.O.E.'s prior timely notice of appeal of the November 18, 2010 administrative

decision.  *See* Doc. No. 1-1, Pl.'s Notice of Removal, Ex. A.  The court had also

subsequently instructed the D.O.E. to inform the court of the status of the

administrative proceedings.  *See* Doc. No. 87.

When the parties met with the court on May 29, 2013, the parties

agreed that both sides intended to challenge issues in the March 20, 2013

administrative decision.  Doc. No. 93.  Accordingly, a new civil action was not

filed.  Rather, proceedings continued in the *current* action, challenging aspects of

the March 20, 2013 administrative decision (which, in turn, supplemented the

court's December 29, 2011 Order, and the original November 18, 2010

administrative decision).  Under such circumstances, there was no jurisdictional

10

requirement to file a *new* notice of appeal under 20 U.S.C. § 1415(i)(2)(A), much less a notice within the time period provided for in § 1415(i)(2)(B) and HAR § 8-60-70(b).

In short, the action remained open (albeit stayed) while the Hearings Officer held further administrative proceedings on remand.  Given that the December 29, 2011 Order was not final, a failure to file a new notice of appeal from the March 20, 2013 administrative decision is not a jurisdictional defect. M.F.'s Motion to Dismiss is DENIED.[4]

## B.     Remaining Issues from the March 20, 2013 Administrative Decision

### 1.     *The Court Upholds the No-Annual-IEP Denial as a Substantive Denial of FAPE*

The December 29, 2011 Order upheld the Hearings Officer's finding in the November 18, 2010 administrative decision that the D.O.E. had committed *procedural* violations of the IDEA in failing to have an IEP in place in the Fall of 2008 and thereafter, and in failing to review a May 2008 IEP annually.  *M.F*., 840

---

[4]  The Motion also seeks to enforce the March 20, 2013 administrative decision by requiring the D.O.E. to pay amounts due to Loveland for the period from December 2009 until November 18, 2010.  The record reflects, however, that the D.O.E. has paid such amounts (subject to further proceedings regarding possible recovery of all or some of that amount, should the D.O.E. prevail on its challenge to the No-Annual-IEP Denial).  In that regard, the parties agree that the Motion is MOOT.

F. Supp. 2d at 1228-32.[5]  The court remanded, however, for further proceedings to

determine whether such procedural errors were harmless.  *See, e.g.*, *L.M. v.*

*Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009) (explaining that a

procedural violation must also result in the "loss of an educational opportunity" or

"seriously infringe the parents' opportunity to participate in the IEP formulation

process" to constitute a denial of FAPE).   Under the circumstances, the court also

remanded for further consideration of the remedy, given the IDEA's requirements

to consider equitable circumstances such as the notice given to a school when

parents unilaterally change a student's placement.  *Id.* at 1227

On remand, the Hearings Officer determined, among other findings,

that the procedural failures were not harmless.  AR at 100, Mar. 20, 2013 Decision

at 23.  The failure to have an IEP in place resulted in lost educational opportunities

and prevented parents from participating in development of an IEP.  *Id.*  Most

critically, the Hearings Officer determined as fact -- after considering the live

---

[5]  Subsequent authority supports this conclusion.  *See Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1055-56 (9th Cir. 2012) (applying the IDEA's requirement that a school district "has an affirmative duty to review and to revise, at least annually, an eligible child's IEP."); *Doug C. v. Haw. Dept. of Educ.*, 720 F.3d 1038, 1045 (9th Cir. 2013) ("An agency cannot blame a parent for its failure to ensure meaningful procedural compliance with the IDEA because the IDEA's protections are designed to benefit the student, not the parent."); *id.* at 1047 ("A procedural error results in the denial of an educational opportunity where, absent the error, there is a 'strong likelihood' that alternative educational possibilities for the student 'would have been better considered.'") (quoting *M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 657 (9th Cir. 2005) (Gould, J. concurring in part and concurring in the judgment)).

testimony of R.F. (Tr. Feb. 4, 2013 at 114-16) -- that M.F.'s parents would have

accepted an offer of a public placement if an appropriate offer had been made.  AR

at 100.

      And the court's review of the hearing confirms that R.F. indicated the

parents were deprived of an IEP in 2009 and 2010, and certainly were not given an

opportunity to participate in the IEP formulation process at critical times.  Tr. Feb.

4, 2013 at 116.  Furthermore, M.F.'s mother also testified that the parents were

never given, much less signed, an actual release form from M.F.'s home school.

*Id.* at 142.  As for the periodic notices mailed to the parents regarding the IDEA's

procedural rights (after M.F. enrolled at Variety School), R.F. testified that he was

never properly informed that he needed to respond to the notices, or that if he did

not respond, he would lose eligibility for IDEA services.  *Id.* at 96-99, 109.

      That is, the parents explained, at least in part, some of the

circumstances whereby they did not respond to the periodic notices sent to them by

the D.O.E.  Ultimately, then, the conclusion that the parents would have accepted,

or at least have seriously considered, a public placement if an appropriate offer had

been made, is a finding based on credibility -- a conclusion adequately supported

by evidence in the record.  Giving appropriate deference to the Hearings Officer's

assessment of the live testimony, the court accepts that finding as true.  *See, e.g.*,

*Amanda J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887-89 (9th Cir. 2001)

(discussing deference courts give to an educational hearings officer's credibility

determinations of live witnesses); *Dep't of Educ. v. R.H.*, 2013 WL 3338581, at *6

(D. Haw. July 2, 2013) ("A hearings officer's determination of a witness's

credibility is generally entitled to deference.").  The court thus AFFIRMS the

Hearings Officer's conclusion that the No-Annual IEP Denial was a denial of

FAPE.

As for the remedy for that denial of FAPE, two points are important:

First, the court recognizes that M.F. has *never* made a claim for tuition

reimbursement for her 2008-2009 school year at Variety School -- M.F. has not

sought to hold the D.O.E. responsible for that unilateral placement.[6]  (This would

likely be the period where the equities might fall most strongly in favor of the

D.O.E., if M.F.'s parents had not properly notified M.F.'s home school that they

were rejecting the May 2008 IEP.)  Rather, as established above, what is at issue

now is only the "sliver" of time from December 2009 until February 11, 2010

(during which time M.F. was enrolled at Loveland).

---

[6]  And to the extent that a lack of an IEP for this period (2008 to 2009) should or should not have factored into the Hearings Officer's award of *compensatory* education for M.F.'s 2010-2011 school year, any such issues are moot, as established above.

Second, the equitable considerations weigh much differently when considering only this sliver (*e.g.*, consideration of any "lack of cooperation" or "ignoring" by M.F.'s parents of the D.O.E.'s periodic notices in 2008 and 2009). *See M.F.*, 840 F. Supp. 2d at 1233 (explaining the IDEA provisions requiring a balancing of equities for lack of parental cooperation or failure to provide adequate notice of an intent to enroll a student in a private placement, and  analyzing how the factual record at that time needed to be developed by the Hearings Officer). That is, the equitable factors that might otherwise tip against the parents are non-existent when viewed against only the sliver beginning in December 2009 -- as of November of 2009 it is *undisputed* that M.F. was in fact seeking a public placement (regardless of whether the parents might not have desired such a placement in 2008 or earlier in 2009).  *See M.F*., 840 F. Supp. 2d at 1220 (explaining that as of November 2009, the parents had responded to a notice from the D.O.E. and were requesting services and/or an updated evaluation).  Moreover, there is *nothing* in the record indicating that the parents did not fully cooperate with the D.O.E. in December 2009 and January 2010 -- there was, for example, no delay in making M.F. available for testing and evaluation, nor in meeting with D.O.E. officials in an attempt to develop an appropriate IEP in January of 2010. No equities weigh against M.F. when considering the sliver.

In short, the court finds no reason to overturn the Hearings Officer's award of tuition reimbursement at Loveland for the period from December 1, 2009 until February 11, 2010.  There was a substantive denial of FAPE (the No-Annual-IEP Denial), and -- as the court has already determined in the December 29, 2011 Order -- the corresponding placement at Loveland was appropriate during this sliver.  Thus, because the D.O.E. has already paid the outstanding invoices for M.F.'s attendance at Loveland for that period, the D.O.E. is not entitled to seek any reimbursement from Loveland or M.F.'s parents for M.F.'s attendance during this time.[7]

## 2.    The Court Affirms the Hearings Officer's Determination of the Amount of the Stay Put Award Beginning November 18, 2010

The December 29, 2011 Order also determined that M.F.'s stay put period began on November 18, 2010, when the Hearings Officer originally ruled in favor of M.F.  *See M.F.*, 840 F. Supp. 2d at 1240.  At that point, M.F.'s placement at Loveland changed from "unilateral" to "bilateral," and thus § 1415(j) applied such that the D.O.E. was responsible for maintaining that current placement (on

---

[7]  The record reflects that on September 17, 2013 the D.O.E. paid Loveland $179,181.75, representing "full payment" for M.F.'s attendance at Loveland from December 2009 until November 18, 2010.  *See* Doc. No. 109-3, Pl.'s Ex. B; Doc. No. 109-4, Pl.'s Ex. C.  The amount includes both the "sliver" period (December 2009 until February 10, 2010) and a period that is now moot (February 11, 2010 until November 18, 2010).  But because the court is ruling in favor of M.F. and because the whole amount has already been paid, the court need not calculate the exact figure for the "sliver."

terms set forth in the November 18, 2010 administrative decision) until the due

process challenges are resolved.  *Id.* at 1240-41.  The court, however, remanded for

further administrative findings as to whether the D.O.E. was also responsible for

payment of certain occupational/physical therapy and speech services (which the

Hearings Officer determined that M.F. did not need as part of a FAPE).  "It [was]

unclear whether M.F. actually received services that the Hearings Officer found

were not necessary."  *Id.* at 1242.  "It [was] also unclear whether the nature of

Loveland's program is such that it is not possible to segregate payment for

individual occupational/physical therapy and speech/language services from its

otherwise integrated program."  *Id.*

On remand, the Hearings Officer determined in the March 20, 2013

administrative decision that:

> The [occupational therapy] and speech-language services
> Student received at the private placement were not a
> necessary part of her program and were not so
> intertwined with her mental health services that they
> could not be separated.  Under stay put, Student is
> entitled to reimbursement for all the services she receives
> at the private placement, less the [occupational therapy]
> and speech-language services.  The DOE has already
> paid the private placement $167,601.88 for Student's
> private placement between November 2010 and August
> 2011[.]

AR at 101, Mar. 20, 2013 Decision at 24.  M.F. continues to challenge this finding

(again improperly characterizing this failure to pay the requested amounts for

occupational/physical and speech therapy as a "reduction" in stay put relief, when

those payments were not included in the November 18, 2010 administrative

decision).

Upon review of the record, the court AFFIRMS the Hearings Officer's

thorough and careful review of this issue.  *See, e.g.*, *Capistrano Unified Sch. Dist.*

*v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995) (setting forth the standard for

reviewing an educational hearings officer's decision under the IDEA, indicating

that "[t]he amount of deference accorded the hearings officer's findings increases

where they are 'thorough and careful'").  As the Hearings Officer found, "[t]he

evidence at both the original hearing [in 2010] and at the remanded hearing [in

2013] showed that [M.F.] did not need the [occupational therapy] and speech-

language services that [Loveland] provided."  AR at 97, Mar. 20, 2013 Decision at

20.

The court fully agrees with the Hearings Officer that "it would be

unreasonable to require the D.O.E. to pay for services that [the] Hearings Officer

did not find to be appropriate."  *Id.*  The Hearings Officer concluded, after hearing

(and rejecting) testimony from John Loveland, the "clinical director" at Loveland,

that Loveland could "easily" segregate their charges if it chose to do so.  *Id.* at 21; Tr. Feb. 4, 2013 at 59-71.  After considering the evidence, the Hearings Officer concluded that these services "were not so intertwined with [M.F.'s] mental health services that they could not be separated."  AR at 101, Mar. 20, 2013 Decision at 24.  The Hearings Officer also found, after hearing testimony from Marcy Kagami, a district educational specialist for the D.O.E., that the D.O.E. used an appropriate and reasonable method of calculating the amounts that Loveland should not have been paid.  *See* AR at 97, Mar. 20, 2013 Decision at 20 (using a rate of $61.00 an hour, with half an hour of therapy and one hour of speech services per day).  These conclusions were based on substantial evidence, were explained in detail, and are entitled to deference as being "thorough and careful."  *See Wartenberg*, 59 F.3d at 891.  And ultimately, the $167,601.88 awarded for the period at issue easily comports with the statutory requirement that the court "grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).

        Thus, for the reasons explained in the Hearings Officer's thorough and careful March 20, 2013 administrative decision as to this issue (as well as for the reasons already explained in the court's December 29, 2011 Order regarding stay put), the court AFFIRMS the Hearings Officer's conclusion as to the amount

of "stay put" relief that the D.O.E. paid to Loveland in 2011 (for the period from November 18, 2010 until August 2011).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (asserting a lack of jurisdiction), Doc. No. 100, is DENIED.  The court AFFIRMS the Hearings Officer's award in the March 20, 2013 administrative decision of payment for the costs of Loveland from December 2009 until February 11, 2010; and AFFIRMS the award of the specific "stay put" relief at issue under 20 U.S.C. § 1415(j).  Other issues regarding relief *after* February 11, 2010 are MOOT because (a) the D.O.E. has waived challenges to a February 11, 2010 Individualized Education Plan ("IEP"); and (b) the relief was otherwise provided under the IDEA's stay put provisions, and the D.O.E. has conceded that it is improper to seek recovery of such stay put payments.

Accordingly, Judgment shall issue in favor of Defendant M.F., by and through her Parents, R.F. and W.F., for the reasons set forth in this Order and in

///

///

///

///

20

the court's December 29, 2011 Order (as clarified in the court's Order of Feb. 28,

2012).  The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 31, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Dept. of Educ, State of Haw. v. M.F.*, Civ. No. 11-00047 JMS-BMK, Order (1) Denying
Defendant's Motion to Dismiss And/or for Judgment on the Pleadings, Doc. No. 100;
(2) Affirming  Hearings Officer's March 20, 2013 Decision; and (3) Directing Entry of Judgment
in Favor of Defendant